T.C. Memo. 1997-160


UNITED STATES TAX COURT


STEVEDORING SERVICES OF AMERICA, INC. AND SUBSIDIARIES,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13399-95.                    Filed March 31, 1997.


<u>P. Bruce Wright</u>, <u>George R. Abramowitz</u>, and <u>Diana E. Buckley</u>,
for petitioners.

<u>Terri A. Merriam</u> and <u>Keith G. Medleau</u>, for respondent.


MEMORANDUM OPINION

COHEN, <u>Chief Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax of $2,018,147 for the fiscal year
ended January 26, 1990.

The issue for decision is whether, upon disaffiliation from
Hanseatic Eastern Insurance Company (Bermuda), Ltd. (Hanseatic)

and Eagle Pacific Insurance Company (Eagle), petitioners are entitled to an insurance premium deduction in the fiscal year ended January 26, 1990, for payments made to Hanseatic in the fiscal years ended 1977 through 1985 and to Eagle in the fiscal years ended 1986 and 1987, in excess of deductions previously allowed for Longshoremen's and Harbor Workers' Compensation Act Amendments of 1984 (LHW Act), Pub. L. 98-426, 98 Stat. 1639, 33 U.S.C. sec. 901 (1994), claims paid.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to Tax Court Rules of Practice and Procedure.

## Background

The material facts have been stipulated, and the stipulated facts are incorporated herein by this reference. The parties have stipulated to the detail and characterization of various contracts entered into during years prior to the one in issue. Because those details are not disputed and do not affect our analysis of the issue for decision, we have not burdened this opinion with them.

At the time the petition was filed, the principal place of business of Stevedoring Services of America, Inc. (Stevedoring), was Seattle, Washington. Stevedoring and its wholly owned subsidiaries primarily engage in stevedoring operations. Stevedoring and its includable subsidiaries (petitioners) filed a

consolidated Federal income tax return for the tax year that began April 5, 1989, and ended January 26, 1990.

Prior to April 5, 1989, petitioners were wholly owned subsidiaries of Services Group of America, Inc. (Services Group). Services Group and its subsidiaries filed consolidated Federal income tax returns. Prior to April 5, 1989, there were a number of restructurings within the Services Group corporate entities and renamings of various corporations. In addition to stevedoring operations, prior to April 5, 1989, Services Group engaged in wholesale food distribution and the insurance business through separate wholly owned subsidiaries.

On April 4, 1989, the Services Group entities were divided in a tax-free transaction pursuant to section 355 (the splitup). Prior to the splitup, Services Group was owned equally by two shareholders, FRS Capital Corporation (FRS) and Thomas Stewart (Stewart). In settlement of a shareholder dispute, FRS relinquished its 50-percent stock interest in Services Group in exchange for all of the stock of Stevedoring. Petitioners carried on all of the stevedoring operations of the former Services Group entities. Petitioners' ownership affiliation with the food services and insurance operations of the former Services Group entities terminated on the effective date of the splitup. As part of the splitup, Stewart received the insurance group and the wholesale food operations of the former Services Group entities. In the splitup, the stock and other consideration

received by FRS had a fair market value that was approximately equal to the fair market value of the Services Group stock surrendered by FRS.

Hanseatic was incorporated in Bermuda on April 10, 1974.  As of April 10, 1974, Hanseatic was equally owned by Seattle Stevedore Co. (a predecessor of Services Group) and Marukyo Company, Ltd. (Marukyo).  On June 30, 1978, Seattle Stevedore Co. purchased all of Marukyo's interest in Hanseatic.

From 1975 through December 31, 1984, Services Group's stevedoring affiliates contracted with Martin Re-Insurance Company and its successor Manhattan Re-Insurance Company (Martin will be used to refer to Martin and/or Manhattan where appropriate) concerning their LHW Act risks.  The LHW Act risks encompass an employer's liability, under the LHW Act, to pay workers' compensation benefits (including medical, income replacement, death and survivors, and employee rehabilitation benefits) in respect of injured employees covered by the LHW Act (generally stevedores and longshoremen).  Martin then contracted with Hanseatic to pass on 100 percent of the risks.  Martin was a licensed U.S. insurance company that was unrelated to Services Group.

From 1974 into 1984, Hanseatic entered into various other insurance and reinsurance contracts with related and unrelated companies with respect to risks of Services Group's stevedoring affiliates.  Hanseatic ceased accepting new risks of Services

Group's stevedoring affiliates at the end of December 1984. Hanseatic continued to be responsible for all risks that it assumed under contracts that it issued for prior years.

Norwesco Insurance Company Limited (Norwesco) was incorporated in Bermuda on September 14, 1979. On the date of incorporation, Norwesco was wholly owned by Brady-Hamilton Stevedore Company (Brady-Hamilton), a stevedoring company that was then unrelated by ownership to Seattle Stevedore Co. On November 9, 1979, Seattle Stevedore Co. purchased a 50-percent interest in Norwesco. On November 15, 1982, Seattle Stevedore Co. purchased Brady-Hamilton. Also on November 15, 1982, Norwesco merged its portfolio into Hanseatic, and, shortly thereafter, Norwesco liquidated.

On June 30, 1983, Services Group acquired Crescent Wharf and its subsidiaries. Crescent Wharf had formed Executive Insurance Company (Executive) in Bermuda in 1980. Crescent Wharf contracted with Insurance Company of North America (INA), a licensed U.S. insurance company, concerning Crescent Wharf's LHW Act risks. INA then contracted with Executive to pass on 100 percent of the risks. Effective January 1, 1984, Executive entered into a portfolio transfer agreement with Hanseatic.

Eagle was incorporated in the State of Washington on June 7, 1978. On August 6, 1982, Seattle Stevedore Co. purchased a 100-percent interest in Eagle. On January 1, 1985, Services Group contributed all of Hanseatic's stock to Eagle. During the years

relevant to this case, Eagle held licenses to conduct the insurance business in the States of Washington and Alaska.

Beginning on January 1, 1985, and through the subsequent years relevant to this case, the stevedoring affiliates of Services Group insured their LHW Act risks with Eagle on a direct basis. After the splitup, Eagle continued to insure all of petitioners' LHW Act risks. In the fiscal years ended January 31, 1986, and January 30, 1987, Eagle received approximately 29 percent and 41 percent, respectively, of its premiums from unrelated insureds. The transactions among Services Group and its subsidiaries and Eagle that were not treated as insurance for tax purposes in 1985 through 1987 would have been treated as insurance transactions in those years if the transactions had been entered into with nonaffiliated parties.

Audit History

Services Group and its affiliates claimed deductions for payments, directly or indirectly, to Hanseatic, Norwesco, Executive, and Eagle as insurance premiums under section 162 in the years paid. Services Group and its subsidiaries were audited for each of its fiscal years ended January 31, 1977, through January 25, 1987, except the fiscal year ended January 25, 1980. As a result of the audits, respondent proposed to disallow insurance premium deductions for payments made in those years directly or indirectly to Hanseatic, Norwesco, Executive, and Eagle.

Services Group filed a petition in this Court for its fiscal years ended January 31, 1977; January 31, 1978; and January 31, 1979. One of the contested issues was the deductibility of the Hanseatic payments. The case was resolved by a Stipulation of Settlement dated September 24, 1986. The Internal Revenue Service (IRS) and Services Group resolved the proposed disallowance of premium deductions for the fiscal years ended January 30, 1981; January 29, 1982; January 28, 1983; January 27, 1984; and January 25, 1985, on terms similar to the Stipulation of Settlement dated September 24, 1986.

The IRS audited Crescent Wharf's 1982 income tax return and disallowed claimed insurance premium deductions made to Executive through INA. The case was settled on terms similar to the Hanseatic settlement. The parties resolved the proposed disallowance of premium deductions for the fiscal years ended January 31, 1986, and January 30, 1987, by agreeing to treat 75 percent of the arrangements with Eagle as insurance for tax purposes and, therefore, to allow 75 percent of the payments to Eagle in each year as deductible insurance premiums in the year paid. The remaining 25 percent was disallowed insurance treatment.

The amounts disallowed as insurance deductions in years prior to the year ended January 26, 1990, were treated as capital contributions to Hanseatic and Eagle, respectively.

As a result of the splitup of the Services Group entities in April 1989, Hanseatic and Eagle became disaffiliated with petitioners, although Hanseatic and Eagle each remained liable for losses under the terms of the contracts they previously entered and assumed that covered the LHW Act losses of petitioners.

In its consolidated Federal income tax return for its fiscal year that began April 5, 1989, and ended January 26, 1990, Stevedoring claimed a deduction in the amount of $6,458,916 in respect of the portions of transactions that were not treated previously as insurance for tax purposes in connection with contracts entered or assumed by Hanseatic. Respondent disallowed the deduction claimed except for $532,432 that respondent allowed as a deduction with respect to LHW Act losses and expenses accrued in petitioners' fiscal year ended January 26, 1990.

In a claim for refund of income taxes that Stevedoring made for the fiscal year ended January 26, 1990, Stevedoring claimed a deduction in the amount of $3,590,614 in respect of the portions of the transactions between Services Group and Eagle that were not treated as insurance for tax purposes prior to disaffiliation from Eagle, and Stevedoring sought a refund of income taxes in the amount of $1,220,809. On March 23, 1995, the IRS Appeals Office at Seattle, Washington, mailed to Stevedoring a notice of partial disallowance of the claim for refund. The amount of refund that was disallowed was $1,097,216.

Discussion

Petitioners bear the burden of proving their entitlement to the claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133. "[A] taxpayer seeking a deduction must be able to point to an applicable statute and show that * * * [the taxpayer] comes within its terms." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Petitioners have advanced numerous arguments in support of their position that the splitup resulted in a deduction under section 162 for insurance expenses. They have cited no authority that supports their arguments. They have ignored the language and fundamentals of section 162(a): "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Emphasis added. The disputed deduction claimed by petitioners does not include any payments that were made or expenses accrued in the year ended January 26, 1990. The claimed deduction did not arise out of new contracts entered during the year ended January 26, 1990. Instead, petitioners ask us to "deem" an insurance premium payment as a result of the section 355 splitup.

With respect to every item of expense that is claimed as a deduction under section 162, a taxpayer must establish: (1) That

the expense was paid or incurred; (2) that it was paid or incurred during the taxable year in issue; (3) that it was paid or incurred in carrying on a trade or business; and (4) that the expense was ordinary and necessary. Sec. 162; sec. 1.162-1, Income Tax Regs. Petitioners did not pay or incur any additional insurance expenses in the year ended January 26, 1990. All of the claimed amounts were paid in years prior to the year ended January 26, 1990, with regard to insurance contracts entered into and in effect in those prior years. See sec. 461(a). Petitioners made no economic outlay and incurred no liability in the year ended January 26, 1990, that would give rise to a deduction. Therefore, no deduction is allowed under section 162(a).

Both parties have argued at length about whether or not certain of the transactions entered into by petitioners and Hanseatic and Eagle, respectively, were "insurance" for tax purposes. We need not decide whether the transactions constituted insurance because nothing occurred in the year ended January 26, 1990, that would entitle petitioners to a deduction even if the transactions were "insurance".

Petitioners have also argued that, in order to portray the economic realities of the splitup, a deduction must be allowed. Disallowance of the claimed deduction, however, reflects the following economic realities: Petitioners previously made payments to related insurance companies for which deductions were

denied, at least in part.  The amounts disallowed were treated as capital contributions to the related insurance companies and increased the equity value of the related insurance companies. Petitioners and the related insurance companies subsequently became disaffiliated in a reorganization involving Services Group stock.  The value of the Services Group stock reflected the value of Eagle (successor to Hanseatic).  The stock and other consideration received by FRS in the splitup had a fair market value that was approximately equal to the fair market value of the Services Group stock surrendered by FRS.

Petitioners contend that "The consideration for the transfer of risks to Hanseatic and Eagle upon disaffiliation was as an economic matter separate from the stock exchanged in the arm's-length disaffiliation transaction."  No evidence has been presented by petitioners to support their contention, and there is no basis for a negative allocation of consideration to "transfer of risks".

We have considered petitioners' other arguments and have determined that they are also without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.